IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  11-P0-01054-MJW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JOSHUA R. REED,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

      This matter came before the court for trial on August 25, 2011.  The Plaintiff

United States of America ("Government") was represented by Assistant United States

Attorney Ryan Bergsieker.  The Defendant Joshua R. Reed ("Defendant") was

represented by Deputy Federal Public Defender Robert  Pepin.

      The court has considered the testimony and credibility of all the witnesses and

the exhibits admitted into evidence.  In addition, the court has taken judicial notice of the

court's file under Fed. R. Evid. 201 and has considered applicable Federal Rules of

Criminal Procedure and case law.  Lastly, the court has considered closing arguments

presented by the parties through counsel.  The court now being fully informed makes

the following finding of fact, conclusions of law, and Order for Judgment.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the evidence presented at trial, this court finds beyond a reasonable doubt:

1.      That I have jurisdiction over the subject matter and over the parties to this lawsuit;

2.      That venue is proper in the state and District of Colorado;

3.      That each party has been given a fair and adequate opportunity to present their evidence at trial;

4.      That the Government has charged Defendant by Information with one count of Driving Under Restraint, in violation of 16 U.S.C. § 3 and 36 C.F.R. § 4.2, and § 42-2-138, C.R.S.  As charged under 16 U.S.C. § 3 and 36 C.F.R. § 4.2, the offense is a Class B Misdemeanor;

5.      That the elements of the offense of Driving Under Restraint are:

On or about September 5, 2010, within the special maritime and territorial jurisdiction of the United States in Rocky Mountain National Park in the State and District of Colorado, the Defendant, JOSHUA R. REED, knowingly and unlawfully violated a provision of Colorado State law governing traffic and the use of vehicles by driving a motor vehicle upon a highway of the State with knowledge that his license and privilege to drive was restrained and under restraint;

6.      That on September 5, 2010, at approximately 4:40 p.m., Ranger

Theron M. Daniel was patrolling in his marked patrol car on Trail Ridge Road in the Rocky Mountain National Park ("Park"), which is located in the special maritime and territorial jurisdiction of the United States and also located in the state and District of Colorado.

Ranger Daniel was traveling south on Trail Ridge Road in his patrol car near the Holzworth Historic site on the west side of the Park. Ranger Daniel testified that he observed a red Jeep with temporary plates [temporary tag No. 080904H Colorado] traveling northbound on Trail Ridge Road at a high rate of speed. He estimated that the red Jeep was traveling at 57 m.p.h. in a 45 m.p.h. zone. Ranger Daniel confirmed the red Jeep's speed at 57 m.p.h. with his radar device in his patrol car that he had earlier calibrated with tunning forks before he went on traffic patrol that day. The red Jeep then passed Ranger Daniel's patrol car. Ranger Daniel described the driver of the red Jeep as a white male with slicked-back hair and a beard with a nose ring. After the red Jeep passed Ranger Daniel in the opposite direction, he activated his emergency lights and siren to initiate a traffic stop, and he made a u-turn with his patrol car to pursue the red Jeep. According to Ranger Daniel, the red Jeep did not stop, but instead the red Jeep pulled into the Holzworth Historic site parking lot. Ranger Daniel then pulled into the Holzworth Historic site parking lot and pulled his parol car behind the red

Jeep.  See Defendant's exhibit A.  When Ranger Daniel exited his patrol car in the parking lot, a white male, later identified as the Defendant, began walking towards Ranger Daniel.  Ranger Daniel did not see the Defendant exit the red Jeep, and in the driver's seat of the red Jeep was Hilary Kautz, who also has slicked-back hair. See Defendant's exhibit A.  The Defendant then asked Ranger Daniel, "What's up?"  Ranger Daniel told the Defendant that he was stopped for exceeding the speed limit by traveling 57 m.p.h. in a 45 m.p.h zone, at which time Defendant stated: "I wasn't driving." Ranger Daniel asked for Defendant's driver's license, but Defendant did not have a driver's license on his person.  Instead, Defendant gave to Ranger Daniel a Colorado Identification card bearing No. 97-219-0002.  Ranger Daniel did a records check on Defendant based upon the Colorado Identification card, D.O.B., and SSN, and it was determined from such records check that Defendant's driver's license was revoked.  Ranger Daniel issued Defendant traffic tickets for Exceeding the Posted Speed Limit 57 m.p.h. in a 45 m.p.h. zone and Driving a Motor Vehicle While Revoked.  As the traffic tickets were being issued to Defendant, the Defendant stated to Ranger Daniel the he (meaning Ranger Daniel) needed glasses.  Defendant was not arrested.

Ranger Daniel then drove to the Grand Lake Entrance Station into

the Park to review video recordings of vehicles that had entered the

Park through that station.  These video recordings show that the

red Jeep had entered the Park through the Grand Lake Entrance

Station at approximately 4:26 p.m. on September 5, 2010.

However, these videos do not positively identify the driver of the red

Jeep.  In the videos, you can only see the left arm and hand of the

driver of the red Jeep.  See Government's exhibit 3.  I find that both

Trail Ridge Road in Rocky Mountain National Park and the Grand

Lake Entrance Station for Rocky Mountain National Park are both

areas within the exclusive territorial jurisdiction of the United States

and are located in the state and District of Colorado, as defined by

18 U.S.C. §§ 7 and 13.

In June 2011, Ranger Daniel tried to contact Hilary Kautz and left a

voice message for her.  Ranger Daniel was trying to find out more

information about one of the passengers in the red Jeep named

Daniel Lloyd.  During this time, Ranger Daniel was in training, but

Ms. Kautz did not provide any additional information concerning

Daniel Lloyd.

During Ranger Daniel's testimony at trial, he positively identified

Defendant, in open court, as the driver of the red Jeep;

7.     That Visitor Use Assistant Mark Adam testified that he is a seasonal

worker and was working on September 5, 2010, at the Grand Lake Entrance Station for the Park.  Mr. Adam was working the 9:30 a.m. to 6:00 p.m. shift at Kiosk #1 at the Grand Lake Entrance Station.

Mr. Adam testified that he observed that a man was driving the red vehicle when it entered the Park through Kiosk #1 at the Grand Lake Entrance Station.  He described the man as having a black or grayest "Bull Ring" in his nose and having a small to medium build.  He further testified that the Bull Ring caught his attention since he had never seen a person come into the Park with that type of a very distinctive knotty-ended Bull Ring [nose ring] with such a black shine to it.  Mr. Adam was not asked by the Prosecution and he did not positively identify the driver of the red vehicle as the Defendant in open court during the bench trial.

Lastly, Mr. Adam testified that he had to do his remittance [i.e., reconcile his cash drawer] at the end of his shift on September 5, 2010.  While Mr. Adam was in the process of reconciling his cash drawer at the end of his shift, Ranger Daniel came into the video room at the Grand Lake Entrance Station where he was performing his reconciliation and asked him about the red Jeep and if he remembered the driver of the red Jeep.  It should be noted that his testimony is in opposite to what Ranger Daniel testified concerning follow up contact with Mr. Adam.  Ranger Daniel said he later interviewed Mr. Adam at his residence and never testified that he

interviewed Mr. Adam as he came off shift at the office located in the

Grand Lake Entrance Station on September 5, 2010;

8.     That Government's exhibits 1 and 2, show that:

a.     On or about August 17, 1998, the Colorado Department of Motor

Vehicles mailed Defendant notice that his Colorado driver's license

had been revoked, effective August 20, 1998;

b.     On or about August 20, 1998, Defendant's Colorado driver's license

was revoked based on his purchase or possession of alcohol as a

minor;

c.     On or about April 28, 2008, Defendant obtained a California driver's

license;

d.     On or about May 24, 2008, Defendant was cited in California for

Driving Under the Influence of Alcohol or Drugs;

e.     On or about July 3, 2008, the California Department of Motor

Vehicles mailed Defendant a letter, informing him that his California

driver's license would be suspended effective August 6, 2008,

based on his driving with ah excessive blood alcohol level;

f.     On or about July 30, 2008, Defendant was served with a copy of

the letter, for which he signed;

g.     On or about August 6, 2008, Defendant's California driver's license

was suspended based on his driving with an excessive blood

alcohol level;

h.     On or about August 15, 2008, Defendant was convicted in a

California state court of driving with a blood alcohol level of 0.08 or more based on the citation he received on or about May 24, 2008;

i.     On or about August 15, 2008, Defendant received another notice that his California driver's license was suspended based on his alcohol-related driving conviction;

j.     On or about September 2, 2008, Defendant was informed of his notice verbally by a court, law enforcement agency, or the Department of Motor Vehicles;

k.     On or about May 9, 2009, Defendant was cited in California for Driving Under the Influence of Alcohol or Drugs, Driving with a Suspended License, and Hit & Run (Property Damage);

l.     On or about May 9, 2009, Defendant was served by a law enforcement officer with written notice that his California driver's license was suspended;

m.     On or about June 8, 2009, Defendant's California driver's license was suspended based on his driving with an excessive blood alcohol level on or about May 9, 2009;

n.     Defendant failed to appear for two court proceedings based on the citations he was issued on or about May 9, 2009.  Following each of those proceedings, another notice that his license had been suspended was generated by the California Department of Motor Vehicles.  These notices, which were issued on June 9, 2009, and July 3, 2009, were returned unclaimed;

o. On or about June 7, 2010, Defendant was convicted of driving with a blood alcohol level greater than 0.08 based on the citations he received on or about May 9, 2009. Defendant was sentenced to five years of probation. One of the terms of Defendant's probation was that he drive only if licensed and insured;

p. On or about June 17, 2010, another notice that his license had been suspended, effective June 7, 2010, was mailed to Defendant. The notice was returned unclaimed;

q. After Defendant's California driver's license was first suspended on or about August 6, 2008, the license was never reinstated;

r. On or about January 8, 2010, Defendant surrendered his California driver's license to the Colorado Department of Motor Vehicles and obtained a Colorado Identification Card; and

s. Defendant's license and privilege to drive was restrained solely or partially because of an alcohol-related driving offense;

9. That Hilary Kautz testified that she was driving the red Jeep Liberty and not Defendant on September 5, 2010. She further testified that the red Jeep Liberty is owned by her father, and she uses it. In the red Jeep Liberty on September 5, 2010, were six people according to Ms. Kautz. She was the driver of the red Jeep Liberty all day, Defendant was seated in the front seat passenger side all day, and her two children [a girl named Miracle age 13 and a boy named Matthew age 9] along with an adult friend of Defendant's, Daniel Lloyd from California, and a "troubled girl,"

who lived in Ms. Kautz's apartment complex in Englewood, Colorado, named Stephanie, were all in the back seat. It should be noted that Ranger Daniel never interviewed any of the back seat passengers in the red Jeep Liberty to determine who was the driver. In addition, Ranger Daniel testified that the two children in the red Jeep Liberty were girls instead of one boy and one girl. Ms. Kautz testified further that she always wears her hair pulled back [see Defendant's exhibit A] and that she and Defendant are living together currently in Littleton, Colorado, and have been together on and off for approximately fifteen (15) years, but she does not consider herself to be Defendant's girlfriend but instead describes her relationship with Defendant as "it's complicated." Ms. Kautz admits that she may have been driving over the speed limit when she was driving back from the lakes and further that she was driving when Ranger Daniel pulled up behind her red Jeep Liberty in the parking lot;

10.    That Special Agent Elizabeth Shott testified that she is a Special Agent for the National Parks Service. She was asked to do a follow-up interview with Hilary Kautz by Ranger Daniel. She made efforts to contact Ms. Kautz at her home on July 26, 27, 28, and 29, 2011, but all were unsuccessful;

11.    That approximately fourteen (14) minutes elapsed between the time the red Jeep passed through the Park through Kiosk #1 at the Grand Lake Entrance Station until physical [face-to-face] contact was made by Ranger Daniel with Defendant at the Holzworth Historic site parking lot. Moreover,

Ranger Daniel testified that he did lose sight of the red Jeep when he went past the red Jeep on Trail Ridge Road and when he was making a u-turn with his patrol car; and

12.     That under of Colorado law, reasonable doubt is defined as follows:

Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or lack of evidence, in the case.  It is doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause a reasonable people to hesitate to act in matters of importance to themselves.  See COLJI 3:4.

## ORDER FOR JUDGMENT

**WHEREFORE**, based upon these findings of fact and conclusions of law, I conclude that the Government has failed to prove, beyond a reasonable doubt, the element of identification of Defendant in count one in the Information that charges Defendant Joshua R. Reed with Driving under Restraint in violation of 16 U.S.C. § 3 and 36 C.F.R. § 4.2, and § 42-2-138, C.R.S.  Accordingly, I find the Defendant Joshua R. Reed NOT GUILTY.

It is **THEREFORE ORDERED** that this case is **DISMISSED WITH PREJUDICE**, and any outstanding warrants are quashed.

Done this 7th day of September, 2011.

BY THE COURT

s/ Michael J. Watanabe
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE